## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## MEMPHIS DIVISION

| | |
|---|---|
| THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., as indenture trustee<br><br>　　　Plaintiff,<br><br>v.<br><br>GMF-WARREN/TULANE, LLC, a Tennessee limited liability company; and LEDIC REALTY COMPANY, LLC, a Tennessee limited liability company,<br><br>　　　Defendants. | Case No. _____ |

## VERIFIED COMPLAINT FOR MONEY DAMAGES
## AND APPOINTMENT OF RECEIVER

The Bank of New York Mellon Trust Company, N.A., solely in its capacity as indenture trustee (the "*Trustee*") under that certain Trust Indenture (the "*Indenture*"), dated as of May 1, 2011, between The Health, Educational and Housing Facility Board of the City of Memphis, Tennessee (the "*Issuer*") and the Trustee, by and through its undersigned counsel, files this complaint seeking entry of a money judgment against and the appointment of a receiver for GMF-Warren/Tulane, LLC (the "*Borrower*") and related relief against LEDIC Realty Company, LLC ("*Manager*")[1] and respectfully avers as follows:

### NATURE OF THE ACTION

1.　　The Trustee serves as trustee for the holders of The Health, Educational and Housing Facility Board of the City of Memphis, Tennessee Multifamily Housing Revenue Bonds

---

[1]　The Manager is named as a party to this Verified Complaint for the sole purpose of enjoining its actions as they may interfere or conflict with the actions of any receiver that the Court may appoint. No monetary relief is sought from the Manager.

(GMF-Warren/Tulane Apartments Project), Senior Series 2011A (the "***Bonds***") issued under the Indenture.[2]

2.     As of the date of this complaint, the Bonds are outstanding in the aggregate principal amount of $11,815,000, <u>plus</u> unpaid interest, costs, and fees (all of which continues to accrue).

3.     Pursuant to Rules 65(a), 65(b), and 66 of the Federal Rules of Civil Procedure (the "***Federal Rules***"), the Trustee seeks to enforce the Borrower's various contractual duties and obligations to the Trustee and holders of the Bonds (the "***Bondholders***") arising out of the Bond Documents (as defined below).

4.     Accordingly, the Trustee seeks entry of orders granting the following relief: (a) entry of a money judgment against the Borrower for all amounts due and payable on the Bonds as of the date of such judgment, pre- and post-judgment interest, attorneys' fees, and the expense of collection; (b) the appointment of a receiver over the Collateral (as defined below) in order to specifically enforce the terms of the Bond Documents (as defined below) and satisfy the money judgment; (c) injunctive relief in aid of the receiver and to protect the Collateral (as defined below); and (d) such other and further equitable and legal relief as this court may find just and proper.

<u>PARTIES, JURISDICTION, AND VENUE</u>

5.     The Trustee is a national banking association with its principal office located in Los Angeles, California, and brings this suit in its capacity as trustee under the Indenture for the benefit of the Bondholders.

6.     Section 8.02(c) of the Indenture authorizes the Trustee to enforce the terms of the Indenture for the benefit of the Bondholders.

---

[2]   The Taxable Subordinate Series 2011B-T Bonds issued under the Indenture have been retired.

7.       Section 3.4 of the Loan Agreement (as defined below) grants the Trustee the right to enforce all obligations of the Borrower under the Loan Agreement.

8.       The Borrower is a Tennessee limited liability company with its principal place of business located at 65 Germantown Court, Suite 409, Cordova, Tennessee.

9.       The Borrower's registered agent is Richard L. Hamlet at 65 Germantown Court, Suite 409, Cordova, Tennessee.

10.      The Borrower is a proper party defendant because Borrower is the direct obligor under the Indenture and Loan Agreement.

11.      The Borrower may be served at the following address:

> GMF-WARREN/TULANE, LLC
> 65 Germantown Court, Suite 409
> Cordova, Tennessee 38018
> Attn: Rev. Richard Hamlet, President

12.      The Manager is a Delaware limited liability company with its principal place of business located at 555 Perkins Extended, Second Floor, Memphis Tennessee 38117-4421.

13.      The Manager's registered agent is R. Hunter Humphreys at 6000 Poplar Avenue, Suite 400, Memphis, Tennessee 38119-3955.

14.      The Manager is a proper party defendant because it is acting as agent for the Borrower in managing the Collateral (as defined below).

15.      The Manager may be served at the following address:

> LEDIC Realty Company, LLC
> 555 Perkins Extended, Suite 200
> Memphis, Tennessee 38117
> Attn: Pierce Ledbetter

16.      The amount in controversy, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand Dollars ($75,000).

17.     This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

18.     Venue is proper in this court because the Borrower and the Manager reside within this district.

19.     Venue is further proper in this court because the Mortgaged Property (as defined below) is located in this district.

**FACTUAL BACKGROUND**

**I.    The Indenture and Bonds.**

20.     The Bonds were issued pursuant to the Indenture to enable the Borrower to acquire, renovate, and equip a multifamily rental housing development known as Warren Apartments located at 1373 Clementine Road, Memphis, Tennessee (the "***Warren Apartments***") and multifamily rental housing developments known as Tulane Apartments located at 4735 Tulane Road and 4801 Tulane Road, Memphis, Tennessee (the "***Tulane Apartments***" and together with the Warren Apartments, the "***Project***").

21.     A true and correct copy of the Indenture is attached to this complaint as **Exhibit 1** and is incorporated in this paragraph by reference.

22.     Pursuant to the Indenture, in order to secure the repayment of the Bonds, the Issuer bargained, sold, conveyed, mortgaged, assigned, pledged, and granted to the Trustee all of the Issuer's right, title and interest in and to, among other things, the Loan Agreement  (as defined below), the Note (as defined below), the HAP Assignment (as defined below), the Regulatory Agreement (as defined below), the Deed of Trust (as defined below), and the present and continuing right to make claim for, collect, and receive any of the sums, amounts income, revenues, issues and profits and any other sums of money payable or receivable under the Loan Agreement, the Notes, the HAP Assignment, the Regulatory Agreement, and the Deed of Trust.

23.     Pursuant to section 2.02 of the Indenture, interest accrued on the Bonds during each Interest Period (as defined in the Indenture) shall be paid on the following Interest Payment Date (as defined in the Indenture).

24.     Pursuant to Section 3.03 of the Indenture, the Bonds are subject to mandatory sinking fund redemptions on June 1 and December 1 of each year, as more specifically set forth in Sections 3.03(a) and 3.03(b) of the Indenture.

**II.     The Loan, Loan Agreement, and Related Documents.**

25.     Contemporaneous with the issuance of the Bonds, the Issuer loaned to the Borrower the proceeds of the Bonds (the "***Loan***").

26.     To evidence the Loan, the Issuer, the Trustee, and the Borrower entered into that certain Loan Agreement among the Issuer and the Borrower, dated as of May 1, 2011 (the "***Loan Agreement***").

27.     A true and correct copy of the Loan Agreement is attached to this complaint as **Exhibit 2** and is incorporated in this paragraph by reference.

28.     To further evidence the Loan, the Borrower executed and delivered to the Issuer, inter alia, that certain Multifamily Promissory Note, Series 2011A in the original principal amount of $11,815,000 (the "***Note***").

29.     A true and correct copy of the Note is attached to this complaint as **Exhibit 3** and is incorporated in this paragraph by reference.

30.     Pursuant to Section 3.2 of the Loan Agreement, the Borrower covenanted and agreed to repay the Loan by paying an amount sufficient to pay the principal of, premium, if any, and interest due on the Bonds.

31.     The Note provides that the principal amount, interest, and premium, if any, on the Note shall be payable on the dates and in the amounts that principal, interest, and premium, if any, on the Bonds are payable.

32.     Section 3.2(f) of the Loan Agreement states that "As security for its obligations to make the payments required in subsections (a) through (e) above, the Company shall pay (or cause the Manager to pay) all Project Revenues, upon receipt, to the Trustee for the deposit in the Revenue Fund."

33.     The "Project Revenues" are defined in the Indenture to include "all cash operating and non-operating revenues of the Project," less certain proceeds not relevant to this Complaint.

34.     Pursuant to Section 3.3 of the Loan Agreement, the Borrower's obligations to make all payments required by the Loan Agreement and to perform and observe the other agreements contained in the Loan Agreement are absolute and unconditional and shall not be subject to any defense or any right of setoff, counterclaim or recoupment.

35.     Section 3.3 of the Loan Agreement also limits the Borrower's liability under the Loan Agreement to the Borrower's interest in the Project, the Project Revenues (as defined in the Loan Agreement), the amounts held in the funds and accounts created under the Indenture or other Bond Documents (as defined below), and such other security as may from time to time be given for the payment of obligations under the Bond Documents (as defined below).

III.    **The Deed of Trust.**

36.     To secure the repayment of the Borrower's obligations under the Indenture, Loan Agreement, and Notes, the Borrower executed and delivered to the Issuer that certain Deed of Trust, Assignment of Rents and Security Agreement (Warren and Tulane Apartments), dated as of May 1, 2011 (the "***Deed of Trust***").

37.     A true and correct copy of the Deed of Trust is attached to this complaint as **Exhibit 4** and is incorporated in this paragraph by reference.

38.     Pursuant to the Deed of Trust, the Borrower conveyed in trust, for the benefit of the Trustee ("a" through "n," the "***Mortgaged Property***" and together with the Project, the "***Collateral***"):

    a.    the land described in <u>Exhibit A</u> to the Deed of Trust (the "***Land***");

    b.    the buildings, structures, improvements, and alterations now constructed or at any time in the future constructed or placed upon the Land, including any future replacements and additions (the "***Improvements***");

    c.    all property which is so attached to the Land or the Improvements as to constitute a fixture under applicable law, including: machinery, equipment, engines, boilers, incinerators, installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring and conduits used in connection with radio, televisions, security, fire prevention, or fire detection or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances; light fixtures, awnings, storm windows and storm doors; pictures, screens, blinds, shades, curtains and curtain rods; mirrors; cabinets, paneling, rugs and floor and wall coverings; fences, trees and plants; swimming pools; and exercise equipment (collectively, the "***Fixtures***");

    d.    all equipment, inventory, general intangibles which are used now or in the future in connection with the ownership, management or operation of the Land or the Improvements or are located on the Land or in the Improvements, including furniture, furnishings, machinery, building materials, appliances, goods, supplies, tools, books, records (whether in written or electronic form), computer equipment (hardware and software) and other tangible personal property (other than Fixtures) which are used now or in the future in connection with the ownership, management or operation of the Land or the Improvements or are located on the Land or in the Improvements, and any operating agreements relating to the Land or the Improvements, and any surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements and all other intangible property and rights

including intellectual property relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental permits relating to any activities on the Land (collectively, the "**_Personalty_**");

e.  all current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights-of-way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefitting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated;

f.  all proceeds paid or to be paid by any insurer of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, whether or not the Borrower obtained the insurance pursuant to the Issuer's or Trustee's request;

g.  all awards, payments and other compensation made or to be made by any municipal, state or federal authority with respect to the land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, including any awards or settlements resulting from condemnation proceedings or the total or partial taking of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof;

h.  all contracts, options and other agreements for the sale of the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property entered into by Borrower now or in the future, including cash or securities deposited to secure performance by parties of their obligations;

i.  all proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds;

j.  all rents (whether from residential or non-residential space), revenues and other income of the Land or the Improvements, including subsidy payments received from any sources (including but not limited to payments under any Housing Assistance Payments Contract), parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Mortgaged Property, whether now due, past due, or to become due, and deposits forfeited by tenants (collectively, the "**_Rents_**");

k.  all present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or

written, covering or affecting the Mortgaged Property, or any portion of the Mortgaged Property, and all modifications, extensions or renewals (collectively, the "*Leases*");

l.    all earnings, royalties, accounts receivable, issues and profits from the Land, the improvements or any other part of the Mortgaged Property, and all undisbursed proceeds of the loan secured by the Deed of Trust and, if the Borrower is a cooperative housing corporation, maintenance charges or assessments payable by shareholders or residents;

m.    all tenant security deposits which have not been forfeited by any tenant under any Lease; and

n.    all names under or by which any of the Mortgaged Property may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Mortgage Property.

39.    Pursuant to Section 3(a) of the Deed of Trust, the Borrower also assigned and transferred to the Issuer all rents and any and all current and future leases upon all or any part of the Mortgaged Property.

40.    To perfect the liens and security interests granted pursuant to the Deed of Trust, the Deed of Trust was properly recorded on June 17, 2011, with the Shelby County, Register of Deeds as instrument number 11058898.

41.    To further perfect the liens and security interests granted pursuant to the Deed of Trust, the Issuer caused to be filed a: (a) UCC-1 Financing Statement on June 22, 2011 with the State of Tennessee Department of State as UCC document number 111-031113 (the "*State Financing Statement*"); and (b) UCC-1 Financing Statement on June 17, 2011 with the Shelby County, Register of Deeds as instrument number 11058900 (the "*County Financing Statement*").

42.    A true and correct copy of the State Financing Statement is attached to this complaint as **Exhibit 5** and is incorporated in this paragraph by reference.

43.     A true and correct copy of the County Financing Statement is attached to this complaint as **Exhibit 6** and is incorporated in this paragraph by reference.

## IV.     The Regulatory Agreement.

44.     To assure the Issuer and Bondholders that interest on the Bonds would be excluded from gross income for federal income tax purposes, and to satisfy the public purposes for which the Bonds were authorized to be issued, and to satisfy the purposes of the Issuer in determining to issue the Bonds, the Issuer, the Trustee, and the Borrower entered into that certain Regulatory Agreement, dated as of May 1, 2011 (the "***Regulatory Agreement***"), imposing on the Borrower certain limits on occupancy of units in the Project, as well as other requirements.

45.     A true and correct copy of the Regulatory Agreement is attached to this complaint as **Exhibit 7** and is incorporated in this paragraph by reference.

46.     Pursuant to the Regulatory Agreement, the Borrower is required to notify the Trustee and the Issuer, as soon as is reasonably possible, of the existence of any situation or the occurrence of any event of which the Borrower has knowledge, the existence or occurrence of which would violate any of the provisions of the Regulatory Agreement or cause the interest on the Bonds to become includable in the gross income of the holders of the Bonds for federal income tax purposes.

47.     The Regulatory Agreement also imposes certain occupancy requirements based upon, among other things, tenant income levels.

## V.     The Housing Assistance Payments Contracts.

48.     To provide additional security for the repayment of the Bonds, the Borrower and the Trustee entered into that certain Assignment of Housing Assistance Payments Contract and Payments, dated as of May 1, 2011 (the "***HAP Assignment***").

49.     A true and correct copy of the HAP Assignment is attached to this complaint as **Exhibit 8** and is incorporated in this paragraph by reference.

50.     Pursuant to the HAP Assignment, the Borrower irrevocably assigned and transferred to the Trustee those certain Housing Assistance Payments Basic Renewal Contracts, effective May 1, 2001, relating to United States Department of Housing and Urban Development ("*HUD*") Section 8 Project Numbers TN43-M000-018 (Warren Apartments), TN43-M000-024 (Tulane I Apartments), and TN43-M000-020 (Tulane II Apartments) (collectively, with any renewals, extensions, amendments and replacements, the "*HAP Contracts*").

51.     Pursuant to the HAP Assignment, the Borrower is required to promptly give the Trustee copies of any notices of default received by the Borrower under the HAP Contracts.

**VI.     The collateral assignment of management contract**

52.     As further security for the Borrower's obligations under the Bond Documents (as defined below), the Borrower and the Trustee entered into that certain Collateral Assignment of Management Agreement, dated as of May 1, 2011 (the "*Collateral Assignment*").

53.     A true and correct copy of the Collateral Assignment is attached to this complaint as **Exhibit 9** and is incorporated in this paragraph by reference.

54.     Pursuant to the Collateral Assignment, the Borrower assigned, conveyed, transferred and granted a security interest in and to: (a) the Management Agreement, dated as of May 1, 2011, by and between the Borrower and Van Rooy Properties, Inc., as manager (the predecessor manager of the Project); (b) all other agreements entered into with any property manager or broker with respect to the management, leasing or operation of the Project; and (c) any and all present and future replacements for, or amendments, modifications, supplements or addenda to, any of the foregoing.

**VII.**   **Perfection of the Trustee's interests.**

55.    To provide notice of and perfect the Trustee's security interests under the Bond Documents, the Trustee caused to be filed a UCC-1 Financing Statement on June 20, 2011 with the State of Tennessee Secretary of State as UCC document number 111-031114 (the "***Trustee's Financing Statement***" and together with the Indenture, Bonds, Loan Agreement, Notes, Deed of Trust, State Financing Statement, County Financing Statement, Regulatory Agreement, HAP Assignment, and Collateral Assignment, the "***Bond Documents***").

56.    A true and correct copy of the Trustee's Financing Statement is attached to this complaint as **Exhibit 10** and is incorporated in this paragraph by reference.

## COUNT I—BREACH OF CONTRACT
### (ABATEMENT OF THE HAP CONTRACTS)

57.    The Trustee incorporates by reference all allegations set forth in paragraphs 1 through this paragraph as if fully set forth at length in this paragraph.

58.    Pursuant to Section 4.12 of the Loan Agreement, the Borrower agreed to comply with all terms of the HAP Contracts.

59.    Pursuant to Section 6 of the HAP Assignment, the Borrower covenanted that it would perform all of the obligations and exercise all of the rights under the HAP Contracts so as to secure the optimum benefits therefrom and to promptly give the Trustee copies of any notices of default received by the Borrower under the HAP Contracts.

60.    On or around May 21, 2015, the Borrower received notice from HUD (the "***HUD Default Notice***") that it was in default under the HAP Contracts as a result of serious physical deficiencies at the Project and Mortgaged Property.

61.    A true and correct copy of the HUD Default Notice is attached as **Exhibit 11** and is incorporated in this paragraph by reference.

62.     On February 3, 2016, the Borrower received notice from HUD that the HAP Contracts were being abated (such notice, the "***HUD Abatement Notice***"), and since that date the Trustee has received no further payments from HUD or the Borrower.

63.     A true and correct copy of the HUD Abatement Notice is attached to this complaint as **Exhibit 12** and is incorporated in this paragraph by reference.

64.     The Borrower did not deliver to the Trustee a copy of the HUD Default Notice, until the Trustee requested it after HUD delivered to the Trustee a copy of the HUD Abatement Notice.

65.     The occurrence or continuance of a "default," a "Default," an "event of default," or "Event of Default" under the HAP Assignment is a Default under section 7.1(g) of the Loan Agreement.

66.     On February 11, 2016, the Trustee sent a notice of default (the "***Notice of HAP Contract Default***") to the Borrower, as a result of the abatement of the HAP Contracts.

67.     A true and correct copy of the Notice of HAP Contract Default is attached to this complaint as **Exhibit 13** and is incorporated in this paragraph by reference.

68.     Therefore, a Default has occurred and continues to occur under Section 7.1(g) of the Loan Agreement.

69.     As a result of the Default under the Loan Agreement, an Event of Default has also occurred and continues to occur under Section 8.01(d) of the Indenture and Section 19(d) of the Deed of Trust.

70.     As a result of the Default under the Loan Agreement and Event of Default under the Indenture and Deed of Trust, the Trustee is entitled under Section 9.04 of the Indenture and

Section 7.5 of the Loan Agreement to recover its fees and expenses (including attorneys' fees and costs) incurred in enforcing the Borrower's obligations under the Bond Documents.

<strong><u>COUNT II—BREACH OF CONTRACT</u></strong><br>(<strong>FAILURE TO PAY INSURANCE PROCEEDS TO THE TRUSTEE</strong>)

71.     The Trustee incorporates by reference all allegations set forth in paragraphs 1 through this paragraph as if fully set forth at length in this paragraph.

72.     Upon information and belief, on or around June 25, 2015, one of the apartment buildings at Warren Apartments (a part of the Mortgaged Property) suffered substantial damage as the result of a fire.

73.     Upon information and belief, on or about September 30, 2015, as a result of insurance claims made as a result of the damages caused by the fire at the Warren Apartments, the Borrower or one of its affiliates received a check for the casualty losses (the "***Insurance Check***").

74.     A true and accurate copy of the Insurance Check is attached to this complaint as **<u>Exhibit 14</u>** and is incorporated in this paragraph by reference.

75.     Following its receipt, the Insurance Check was negotiated.

76.     A true and correct copy of the negotiated Insurance Check is attached to this complaint as **<u>Exhibit 15</u>** and is incorporated in this paragraph by reference.

77.     Pursuant to Section 4.17 of the Loan Agreement, the Borrower agreed to give prompt written notice of the occurrence of any casualty to the Project or any part thereof and to provide the Trustee with a copy of any claim submitted to its insurers for payment of insurance proceeds.   The Borrower failed to give the Trustee prompt notice of the fire at Warren Apartments and never provided the Trustee with a copy of the claim submitted to its insurers for payment of insurance proceeds.   In fact, the Trustee only learned of the fire during a

conversation on or about February 11, 2016 with representatives of the Borrower and the Manager concerning the abatement of the HAP Contracts.

78.    Section 4.17(a) of the Loan Agreement requires that the proceeds of the Insurance Check be paid to the Trustee.

79.    After informal requests to the Borrower that the proceeds of the Insurance Check be paid to the Trustee were not honored, on April 8, 2016, the Trustee (acting through its counsel) made formal written demand (the "Insurance Default Notice") on the Borrower and certain of its affiliates that the proceeds of the Insurance Check be paid to the Trustee. A true and correct copy of the Insurance Default Notice is attached to this complaint as **Exhibit 16** and is incorporated in this paragraph by reference.

80.    The proceeds of the Insurance Check have not been paid to the Trustee.

81.    The failure to pay the proceeds of the Insurance Check to the Trustee within 30 days of receipt of the Insurance Default Notice will constitute a Default under Section 7.1(e) of the Loan Agreement and an Event of Default under Section 8.01(d) of the Indenture and Section 19(d) of the Deed of Trust.

82.    Under Section 9.04 of the Indenture and Section 3.2(c) of the Loan Agreement, the Trustee is entitled to recover its fees and expenses (including attorneys' fees and costs) incurred in enforcing the Borrower's obligations under the Bond Documents.

<u>COUNT III—BREACH OF CONTRACT</u>
**(DIVERSION OF PROJECT REVENUES)**

83.     The Trustee incorporates by reference all allegations set forth in paragraphs 1 through this paragraph as if fully set forth at length in this paragraph.

84.     Section 3.2(f) of the Loan Agreement requires the Borrower to pay, or cause the Manager to pay, to the Trustee all Project Revenues, upon receipt, for deposit in the Revenue Fund.

85.     Since the abatement of the HAP Contracts, neither the Borrower nor the Manager has paid any Project Revenues to the Trustee.

86.     Upon information and belief, HUD has paid to the Borrower or the Manager approximately eighty percent (80%) of the amounts required under the HAP Contracts (the "***HUD Payments***") since March 1, 2016.

87.     The HUD Payments, and any other revenues generated by the Project, constitute Project Revenues which have not been deposited with the Trustee since March 1, 2016.

88.     The Trustee has suffered damages in an amount not less than the HUD Payments, along with any other Project Revenues generated by the Project since at least March 1, 2016.

89.     Accordingly, Defaults have occurred and continue to occur pursuant to Section 7.1(b) of the Loan Agreement.

90.     As a result of the Defaults under the Loan Agreement, Events of Default have also occurred and continue to occur under Section 8.01(d) of the Indenture and Section 19(d) of the Deed of Trust.

91.     As a result of the Defaults under the Loan Agreement and Events of Default under the Indenture and Deed of Trust, the Trustee is entitled under Section 9.04 of the Indenture and

Section 7.5 of the Loan Agreement to recover its fees and expenses (including attorneys' fees and costs) incurred in enforcing the Borrower's obligations under the Bond Documents.

### COUNT IV—APPOINTMENT OF A RECEIVER

92.     The Trustee incorporates by reference all allegations set forth in paragraphs 1 through this paragraph as if fully set forth at length in this paragraph.

93.     Under Rule 66 of the Federal Rules and 28 U.S.C. §§ 2001 *et seq.*, this court is authorized to appoint a receiver over the Collateral.

94.     Further, under section 29(a)(1) of the Deed of Trust, upon the occurrence of an Event of Default under the Deed of Trust, without regard to the adequacy of the Trustee's security, the Trustee is entitled to, either itself, by an agent, or by a receiver, enter upon and take possession of the Collateral and to do any acts the Trustee deems reasonably necessary or desirable to preserve the value, marketability or rentability of the Collateral.

95.     The Trustee has a valid claim against the Borrower.

96.     Defaults have occurred and continue to occur under the Loan Agreement.

97.     Events of Default have occurred and continue to occur under the Indenture and Deed of Trust.

98.     Upon information and belief, the Borrower is insolvent.

99.     As detailed in the HUD Abatement Notice, as of January 25 and 26, 2016, the Collateral had several deficiencies, including, but not limited to, infestation, hazards such as broken glass throughout the grounds and sidewalks, inoperable windows, damaged or broken cabinets, and damaged walls with holes or poor patches.

100.    The HUD Abatement Notice also details that serious unsafe conditions have been observed at the Collateral—*e.g.*, sewage being found on the grounds, vacant units having fallen

into states of disrepair, and unlocked doors and unsecured common areas that have led to people other than the tenants entering and at times living inside the Collateral.

101.    The abatement of the HAP Contracts has significantly compromised, and continues to further compromise, the value of the Collateral.

102.    As a result of the abatement of the HAP Contracts, HUD has indicated that it is commencing to provide assistance with the relocation of substantially all of the residents from Warren and Tulane Apartments to other properties.

103.    Upon information and belief, at each of the Tulane Apartments and Warren Apartments, there are numerous vacant and boarded up units, particularly at the Warren Apartments.

104.    Upon information and belief, there is no longer an on-site manager at the Tulane Apartments and there is a reduced number of maintenance personnel.

105.    Thus, as each day passes, the sole source of revenue for the Borrower is diminishing and the value of the Collateral is being diminished to the detriment of the Trustee and Bondholders.

106.    As a result of the relocation of the residents of Warrant and Tulane Apartments to other facilities and the abatement of the HAP Contracts, the Borrower will have insufficient funds to satisfy the Borrower's obligations under the Bond Documents.

107.    Absent the appointment of a receiver, the Trustee does not have any other adequate legal remedies to enforce its rights under the Bond Documents.

108.    Moreover, due to the fungible nature of certain portions of the Collateral—*e.g.*, the Rents—portions of the Collateral are at risk of being lost, concealed, injured, damaged, destroyed, diminished in value, or otherwise squandered.

109.    As each day passes and Rents are collected and expended, the Trustee and Bondholders are irreparably harmed, as those Rents can never be recouped or otherwise generated again.

110.    The appointment of a receiver will do more good than harm.

111.    Absent the appointment of a receiver, the Trustee will have no ability to enforce and satisfy the money judgments sought in Count I and Count II of this complaint.

112.    As a result, the Bondholders will not receive the benefit of their bargain, absent the appointment of a receiver.

113.    Therefore, the Trustee is entitled to judgment in its favor and against the Borrower appointing Foresite Realty Management, LLC by and through its agent Donald Shapiro (the "***Proposed Receiver***") as receiver (the "***Receiver***") over the Mortgaged Property, with such Receiver having all the rights, powers, duties, authority, and protections ordinarily granted to a receiver and necessary to take possession of, maintain, and preserve the Mortgaged Property, including, without limitation: (a) the obligation to provide monthly operating reports to this court reflecting the Project's prior months' financial performance and status in such form and content, and by such time, as required by order of this court; (b) the right and authority to market and, if appropriate, sell the Mortgaged Property, or any part thereof, pursuant to 28 U.S.C. § 2001 *et seq.* upon the request of the Trustee in accordance with terms to be approved by this court; (c) the right to retain a management company to assist the Receiver in managing and operating the Mortgaged Property; (d) the right and authority to hire an accountant, attorney, or other professionals, subject to further approval by this court; (e) the right and authority to audit the books and records of the Borrower relating to the Mortgaged Property; and (f) the right and authority to use the revenues generated from the Mortgaged Property to pay the reasonable and

necessary expenses of managing and operating the Mortgaged Property, including the Receiver's fees and expenses in accordance with operating budgets approved by this court.

114.    A true and correct copy of the Proposed Receiver's credentials is attached to this complaint as **Exhibit 17** and is incorporated in this paragraph by reference.

### COUNT V—INJUNCTIVE RELIEF
#### (IN AID OF THE RECEIVER)

115.    The Trustee incorporates by reference all allegations set forth in paragraphs 1 through this paragraph as if fully set forth at length in this paragraph.

116.    In order to fortify the Receiver appointed by this court, and to protect the interests of the Trustee, the Bondholders, and any residents of the Mortgaged Property, the Trustee requests that this court enter temporary and permanent injunctions until further order of this court.

117.    Without injunctive relief, portions of the Mortgaged Property may be diverted, wasted, or otherwise dissipated.

118.    Further, without temporary and final injunctive relief, the Receiver and concomitant receivership are unlikely to succeed.

119.    The Trustee is entitled to injunctive relief to aid the Receiver in fulfilling its duties and obligations.

120.    Such injunctive relief is also necessary to aid the Receiver in fulfilling its duties and obligations with respect to the Mortgaged Property.

121.    Accordingly, the Trustee demands judgment in its favor and against the Borrower:

    a.    granting a preliminary injunction against the Borrower, and its successors, assigns, agents, employees, attorneys, or anyone acting for or in concert with the Borrower: (i) enjoining them from possessing or managing the Mortgaged Property and from interfering in any way with the possession or management of the Mortgaged Property by the Receiver; (ii) enjoining them from collecting, withdrawing, transferring, conveying, concealing, or

otherwise disposing of the Mortgaged Property, including Rents, and the proceeds derived therefrom, during and pending the appointment of the Receiver; (iii) requiring them to pay the Rents and other cash collateral derived from the Mortgaged Property to the Receiver; (iv) enjoining them from removing any property from the Mortgaged Property and from removing, destroying, concealing, changing, or altering in any manner any of the books or records relating to the ownership, possession, or operation of the Mortgaged Property; (v) requiring them to pay and turn over immediately to the Receiver and to perform all acts necessary to transfer to the Receiver all funds on hand in cash and all funds held in deposit accounts of or for the benefit of the Mortgaged Property arising from the ownership, possession, or operation of the Mortgaged Property and all accounts, accounts receivable, and any other collectibles and all keys, books, records, equipment, and all things in any manner related to the ownership, possession or operation of the Mortgaged Property;

b. granting a preliminary injunction enjoining the Borrower, and/or any party who is provided with notice of the court's order, from prosecuting any claim against the Receiver or the Mortgaged Property, other than in this action and only after proper motion is filed and an order is entered allowing such party to file such claim herein; and

c. granting a permanent injunction consistent with the above preliminary injunctions, except as modified to the extent necessary to protect the Trustee's interests in the Mortgaged Property.

WHEREFORE, the Trustee respectfully requests entry of judgment in the Trustee's favor:

A. On COUNT I, finding a Default under the Loan Agreement and Events of Default under the Indenture, Deed of Trust and the HAP Assignment have occurred and are continuing as a result of the abatement of the HAP Contracts and granting the Trustee an award of its fees and expenses (including but not limited to the fees and expenses of its attorneys) incurred in enforcing the Borrower's obligations;

B. On COUNT II, finding a Default under the Loan Agreement and Events of Default under the Indenture, Deed of Trust and the HAP Assignment have occurred and are continuing as a result of the Borrower failing to deposit the Insurance Proceeds with the Trustee and granting a money judgment in favor of the Trustee and against Borrower in the amount of

**$625,196.87**, plus pre- and post-judgment interest and the Trustee's fees and expenses (including but not limited to the fees and expenses of its attorneys) incurred in enforcing the Borrower's obligations;

C.     On COUNT III, finding that a Default under the Loan Agreement and Events of Default under the Indenture, Deed of Trust and the HAP Assignment have occurred and are continuing as a result of the failure of the Borrower to deposit the HUD Payments and other Project Revenues with the Trustee and granting a money judgment in favor of the Trustee and against Borrower in an amount not less than the HUD Payments, plus any additional Project Revenues not deposited with the Trustee, plus pre- and post-judgment interest, and the Trustee's fees and expenses (including but not limited to the fees and expenses of its attorneys) incurred in enforcing the Borrower's obligations;

D.     On COUNT IV, appointing a receiver to take possession and control of the Mortgaged Property in order to preserve and protect the Mortgaged Property, and granting such receiver all of the powers, duties, authority, and protections ordinarily granted to a receiver and necessary to possess, maintain, and preserve and otherwise maximize the value of the Mortgaged Property, including, without limitation, the power to sell the Mortgaged Property, or any part thereof, pursuant to 28 U.S.C. § 2011 *et seq*., upon request and further order of this court;

E.     On COUNT V, granting injunctive relief as requested in this complaint to, among other things, enjoin the Borrower (and its agents and all parties acting by, through, or in concert with the Borrower) from dissipating or wasting the Project and Mortgaged Property and from interfering with the duties of the Receiver, to direct the payment of revenues to the Receiver, to enjoin other parties from seeking recovery against the Receiver or the Mortgaged Property, except in accordance with the relief requested in this complaint, and for all other relief that may

become necessary to maintain, preserve, and protect the Mortgaged Property and in aid of the

duties conferred on the Receiver by this court; and

     F.     granting such other and further relief as this court deems just and proper.

Dated: May 6, 2016          Respectfully submitted,


          <u>s/ John C. Tishler</u>
          John C. Tishler (TN BPR No. 013441)
          Blake D. Roth (TN BPR No. 031499)
          Waller Lansden Dortch & Davis, LLP
          511 Union Street, Suite 2700
          Nashville, Tennessee 37219
          Telephone:     615.244.6380
          Facsimile:     615.244.6803
          Email: John.Tishler@wallerlaw.com
                  Blake.Roth@wallerlaw.com

          *Attorneys for The Bank of New York Mellon Trust*
          *Company, N.A., as Trustee*

## VERIFICATION

I, Donna J. Parisi, state that I am a Vice President for The Bank of New York Mellon Trust Company, N.A., I have reviewed the *Verified Complaint for Money Damages and Appointment of Receiver* (the "***Complaint***"), I have personal knowledge of the facts set forth in the Complaint, and that the facts set forth in the Complaint are true and accurate to the best of my knowledge, information and belief.

_____
Donna J. Parisi, Vice President
The Bank of New York Mellon
Trust Company, N.A.

The above signatory is known to me and
acknowledged the foregoing instrument
this *19th* day of ____*April*____, 2016.

SCOTT STAFFORD
Notary Public, State of Ohio
My Comm. Expires 09/22/2016

_____
Notary Public

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2016, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt and by email to their business email address. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

Christopher C. Lamberson, Esq.
Glankler Brown
6000 Poplar Avenue, Suite 400
Memphis, TN 38119
clamberson@Glankler.com
*Attorney for Defendant*

Mr. Pierce Ledbetter
LEDIC Realty Company, LLC
555 Perkins Extended, Suite 200
Memphis, Tennessee 38117
*Principal of LEDIC*

/s John C. Tishler
John C. Tishler (TN BPR No. 013441)
Blake D. Roth (TN BPR No. 031499)
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone:    615.244.6380
Facsimile:    615.244.6803
Email: John.Tishler@wallerlaw.com
        Blake.Roth@wallerlaw.com

*Attorneys for The Bank of New York Mellon Trust Company, N.A., as trustee*